Robert D. Phillips, Jr. (SBN 82639)
Email: rphillips@reedsmith.com
Thomas A. Evans (SBN 202841)
Email: tevans@reedsmith.com
Rachel A. Naor (SBN 284966)
Email: rnaor@reedsmith.com
REED SMITH LLP
101 Second Street
Suite 1800
San Francisco, CA 94105-3659
Telephone: +1 415 543 8700
Facsimile: +1 415 391 8269

Attorneys for Defendant
Great American Life Insurance Company

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOYCE GOERTZEN, an individual, individually and on behalf of herself all similarly-situated persons, by and through her power of attorney BEVERLY KRAUS,<br><br>Plaintiff,<br><br>vs.<br><br>GREAT AMERICAN LIFE INSURANCE COMPANY, and Does 1-50,<br><br>Defendants. | Case No. 4:16-cv-00240-YGR<br><br>**DEFENDANT GREAT AMERICAN LIFE INSURANCE COMPANY'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Date: November 29, 2016<br>Time: 2:00 p.m.<br>Courtroom: 1, Fourth Floor<br><br>Honorable Yvonne Gonzalez Rogers |

# TABLE OF CONTENTS

Page


I. STATEMENT OF ISSUES ..... 1

II. INTRODUCTION ..... 1

III. STATEMENT OF FACTS ..... 2

A. Great American's Fixed Indexed Annuities ..... 2

B. Ms. Goertzen Purchased Several Fixed Indexed Annuities Before Purchasing Her Great American Annuity. ..... 3

C. Plaintiff's Great American Contract ..... 4

D. The Cover Page Of Ms. Goertzen's Policy Included Disclosures Relating To Surrender Charges And The "Free Look" Period. ..... 5

E. Ms. Goertzen Does Not Recall Reviewing Her Great American Policy Or Any Other Details Of Her Decision To Purchase the Policy. ..... 7

F. Ms. Goertzen Alleges That She Was Injured Because The Disclosures On The Cover Page Of Her Annuity Did Not Comply With The Insurance Code ..... 7

IV. ARGUMENT ..... 8

A. Legal Standard ..... 8

B. Ms. Goertzen Lacks Standing To Maintain A Claim Under the UCL ..... 8

1. A UCL Plaintiff Must Establish That They Have Suffered An Injury "As A Result of" The Alleged Unfair Practice. ..... 9

2. The UCL's Standing Requirement Applies To Claims Under The "Unlawful" Prong Of The UCL. ..... 9

3. Ms. Goertzen's Claims That Great American Failed To Comply With Disclosure Requirements Are Premised On Deception, And Therefore Require Proof Of Reliance. ..... 10

4. A California Court Has Applied The UCL's Standing Requirement To Alleged Violations Of Insurance Code § 10127.13 ..... 12

5. The Undisputed Facts Show That Great American's Disclosures Did Not Cause Any Injury to Plaintiff. ..... 13

C. Plaintiff Also Lacks Standing Under Article III Because Her Injuries Are Not "Fairly Traceable" to Great American's Conduct ..... 14

D. Plaintiff's Elder Abuse Claim Also Fails Due To A Lack Of Causation. ..... 15

V. CONCLUSION ..... 16


REED SMITH LLP
A limited liability partnership formed in the State of Delaware

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) .......... 8

*Daro v. Superior Ct. of San Francisco*,
151 Cal. App. 4th 1079 (2007) .......... 10, 13

*Employers Ins. of Wausau v. Granite State Ins. Co.*,
330 F.3d 1214 (9th Cir. 2003) .......... 13

*Fed. Election Comm'n v. Toledano*,
317 F.3d 939 (9th Cir. 2003) .......... 8

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*,
528 U.S. 167 (2000) .......... 14

*Gentges v. Trend Micro Inc.*,
2012 WL 2792442 (N.D. Cal. July 9, 2012) .......... 15

*Hale v. Sharp Healthcare*,
183 Cal. App. 4th 1373 (2010) .......... 10

*In re iPhone Application Litig.*,
6 F. Supp. 3d 1004 (N.D. Cal. 2013) .......... 10, 15

*Jenkins v. JPMorgan Chase Bank, N.A.*,
216 Cal. App. 4th 497 (2013) .......... 10

*Kosta v. Del Monte Foods, Inc.*,
308 F.R.D. 217 (N.D. Cal. 2015) .......... 10

*Kwikset Corp. v. Superior Court*,
51 Cal. 4th 310 (2011) .......... 9, 10

*Lujan v. Nat'l Wildlife Fed'n*,
497 U.S. 871 (1990) .......... 8, 14

*Maxwell v. Unilever United States, Inc.*,
2014 WL 4275712 (N.D. Cal. Aug. 28, 2014) .......... 12

*Mirkin v. Wasserman*,
5 Cal. 4th 1082 (1993) .......... 9, 13

*Orcilla v. Big Sur, Inc.*,
244 Cal. App. 4th 982 (2016) .......... 10

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

*Perlin v. Fountain View Mgmt., Inc.*,
163 Cal. App. 4th 657 (2008) ....16

*Peterson v. Cellco Partnership*,
164 Cal. App. 4th 1583 (2008) ....09

*Phillips v. Apple, Inc.*,
2016 WL 5846992 (N.D. Cal. Oct. 6, 2016)....10

*Pratt v. Whole Food Market California, Inc.*,
2015 WL 5770799 (N.D. Cal. Sept. 30, 2015) ....11

*Salmon Spawning & Recovery Alliance v. Gutierrez*,
545 F.3d 1220 (9th Cir. 2008) ....15

*Spokeo, Inc. v. Robins*,
136 S. Ct. 1540 (2016)....14, 15

*Tabares v. EquiTrust Life Ins. Co.*,
2015 WL 5680393 (Cal. Ct. App. Sept. 28, 2015) ....13

*Tabares v. EquiTrust Life Ins. Co.*,
Case No. BC390915 (Super. Ct. Los Angeles County)....12, 13

*In re Tobacco II Cases*,
46 Cal. 4th 298 (2009) ....9, 11

*Turcios v. Carma Laboratories, Inc.*,
296 F.R.D. 638 (C.D. Cal. 2014)....9

*Ulloa v. McMillin Real Estate & Mortgage, Inc.*,
149 Cal. App. 4th 333 (2007) ....16

**Statutes**

Cal. Bus. & Prof. Code § 17204 ....9

Cal. Ins. Code § 10127.10....7

Cal. Ins. Code § 10127.10(c) ....6

Cal. Welf. & Inst. Code § 15610.30 ....16

Cal. Welf. & Inst. Code § 15610.30(a)(1) ....16

Cal. Welf. & Inst. Code § 15657.5 ....15

**Rules**

Fed. R. Civ. P. 56(a) ....8

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**Other Authorities**

CACI § 3100 (2005) ....................................................................................................................16

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

## I. STATEMENT OF ISSUES

1. Does plaintiff have standing to assert a claim for violation of the UCL "unlawful" and "unfair" prongs based on allegedly insufficient disclosures on the face page of her annuity policy that she does not recall reading or relying on?

2. Does plaintiff have standing under Article III to assert claims based on allegedly insufficient disclosures on the face page of her annuity policy that she does not recall reading or relying on?

3. Does plaintiff have standing to assert claims for elder abuse based on allegedly insufficient disclosures on the face page of her annuity policy that she does not recall reading or relying on?

## II. INTRODUCTION

Plaintiff Joyce Goertzen claims she has been injured as a result of allegedly incomplete disclosures in an annuity policy, but she has no recollection of reading those disclosures and could not even identify her policy at her deposition. She therefore lacks standing to assert a claim under the Unfair Competition Law (UCL), because she cannot show that she suffered injury "as a result of" the alleged nondisclosures. This requirement applies regardless of whether plaintiff purports to sue under the "fraudulent," "unlawful," or "unfair" prong of the UCL. While plaintiff attempts to disclaim any allegation of fraud, her complaint is littered with allegations of "misleading" and "deceptive" conduct that injured seniors by inducing them into purchasing annuities without understanding the charges that are in the annuity policy. Plaintiff cannot show that she was actually misled or induced into buying her annuity because she has testified that she has no recollection of the transaction. She therefore cannot establish that she has standing to bring this claim.

The undisputed evidence dispels any claim that plaintiff was deceived by the allegedly defective disclosures. Ms. Goertzen purchased a Great American fixed indexed annuity from her agent, Michel Hollender. That annuity, like the three annuities she had purchased previously, included surrender charges (also referred to as early withdrawal charges or withdrawal charges), which are fees that are assessed if an owner withdraws more than 10% of the account value of the annuity in any one year during the first ten years of the contract. Mr. Hollender had previously sold

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Ms. Goertzen another, much larger, annuity from another company, and had reviewed and explained the surrender charges that applied to that contract. When Ms. Goertzen purchased her Great American annuity, Mr. Hollender again explained what the surrender charges were and how they applied.

Plaintiff has sued over alleged defects in notices appearing on the face page of her annuity contract relating to surrender charges and the "free look" period, which gives purchasers 60 and over 30 days after they receive their annuity to return it for a full refund. Plaintiff faults Great American for alleged noncompliance with state statutes intended to reduce the risk that seniors may agree to long-term contracts without understanding them, as a result of confusing or misleading sales practices. Plaintiff argues that any noncompliance with the statutes renders any charges under the contracts illegal, regardless of whether the purchasers ever read the disclosures or understood the charges. Courts have repeatedly rejected this "per se" approach to liability.

In addition to failing to satisfy the standing requirement under the UCL, plaintiff cannot establish that she has standing under Article III, because she cannot show an injury "fairly traceable" to the allegedly defective disclosures. Because plaintiff cannot show that the alleged nondisclosures actually caused her any injury, Great American is entitled to summary judgment on all of her claims.

## III. STATEMENT OF FACTS

### A. Great American's Fixed Indexed Annuities

A deferred annuity is a contract between an individual and a life insurance company, in which the individual pays premiums, and the insurance company promises benefits in return. (SMF 1). These benefits include credits to the "account value" of the annuity, which grows over time, death benefits, and guaranteed lifetime withdrawals. (Declaration of Thomas A. Evans in Support of Great American Life Insurance Company's Motion for Summary Judgment ("Evans Decl."), Exh. 2 at 024-026.) The annuities at issue in this case are fixed indexed annuities, which are deferred annuities that provide the opportunity to receive credits that are calculated based on the performance of certain stock indexes. (*Id.* at 016.) An annuity contract may also include one or more riders, which are separate contracts that provide additional benefits to the policyholder for additional costs.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

(*Id.* at 037.)

Fixed indexed annuities are long-term products. If the policyholder elects to withdraw more than 10% of the contract's account value in any year during a specified period, she will be assessed a surrender charge. (*Id.* at 009, 019.) The surrender charges decrease incrementally each year and apply throughout a specified period. (*Id.*)

Great American's annuities are sold through independent agents, meaning that the agents are not required to limit the annuity products they sell to Great American annuities. (Declaration of Keith Seger in Support of Great American Life Insurance Company's Motion for Summary Judgment ("Seger Decl.") ¶ 2.) Although Great American does not control the sales process, Great American takes steps to ensure that each product it issues is suitable for the purchaser. (*Id.* ¶¶ 2, 3.) Great American provides agents with documents that explain the features of each of Great American's annuity products, including surrender charges, and also requires agents to collect information about each customer's finances to make sure that a purchaser has sufficient liquid assets to meet her living expense needs after purchasing an annuity. (*Id.*) Great American reviews this information in conjunction with an annuity application and will not issue the contract if Great American determines that the policyholder does not have sufficient liquidity. (*Id.* ¶¶ 3, 4.)

To provide further confirmation that policyholders understand their products and have purchased annuities suited to their needs, Great American participates in a Customer Assurance Program with LIMRA, a research organization, in which surveys are sent to recent purchasers. (*Id.* ¶ 5.) Great American reviews the responses, which indicate whether the policyowners understood the product had surrender charges or other features. (*Id.*) Where a response indicates that the policyholder may not have understood certain features, Great American follows up with a letter providing additional information and inviting the policyholder to contact the company if they need more information. (*Id.*)

**B. Ms. Goertzen Purchased Several Fixed Indexed Annuities Before Purchasing Her Great American Annuity.**

The Great American annuity was the fourth fixed indexed annuity Ms. Goertzen purchased and the second one she purchased from Mr. Hollender. (Declaration of Michel Hollender in Support

of Great American Life Insurance Company's Motion for Summary Judgment ("Hollender Decl.") ¶¶ 3, 4.) In 2009, Ms. Goertzen purchased an annuity from Aviva with a much larger premium. (SMF 2; Evans Decl., Exh. 3.) The Aviva annuity also had surrender charges, which the contract called withdrawal charges. (SMF 2.) Mr. Hollender explained those charges to Ms. Goertzen before she purchased the policy. (SMF 3.) Ms. Goertzen affirmed in writing that she understood that the annuity had surrender charges. (SMF 4.)

### C. Plaintiff's Great American Contract

In August 2011, Mr. Hollender met with Ms. Goertzen at her home to discuss the purchase of another annuity. (SMF 6.) Ms. Goertzen had indicated that she wanted to pass on the funds to her heirs, so Mr. Hollender recommended the Great American policy with an IncomeSustainer Plus rider, because it offered an enhanced death benefit. (SMF 7.) Plaintiff purchased a Safe Return policy, which is a fixed indexed annuity with withdrawal charges that decrease incrementally over the first 10 years of the annuity. (SMF 5.) Although he had already explained to Ms. Goertzen how surrender charges worked in connection with the sale of the Aviva policy, Mr. Hollender discussed the key provisions of the Great American annuity with Ms. Goertzen. (SMF 3, 8.)

Mr. Hollender reviewed several documents with Ms. Goertzen, including her application for the annuity and a financial disclosure, which requested information used to confirm that the recommended annuity met suitability requirements. (SMF 9.) Mr. Hollender asked Ms. Goertzen the questions on the application and disclosure, and then recorded her verbal responses in the documents. (*Id.*) He then provided the documents to Ms. Goertzen to review and sign. (*Id.*) In the Disclosure, Ms. Goertzen indicated that her intended use of the annuity was for the death benefit, growth potential, and safety. (SMF 10.) She acknowledged that she had sufficient available cash, liquid assets or other sources of income for living expenses, health care and emergencies other than the money she planned to use to purchase her Great American annuity. (*Id.*) When asked if she intended to take any withdrawals, Ms. Goertzen only indicated that she intended to take Required Minimum Distributions, consistent with her intent of setting the money aside as to pass on to her children. (SMF 11.)

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Mr. Hollender delivered Ms. Goertzen's contract to her in person. (SMF 12.) During that meeting, he explained the features of the annuity, including the surrender charges. (*Id.*) Although the charges are called "Early Withdrawal Charges," on the specification page, Mr. Hollender used the term "Surrender Charge" to describe them. (*Id.*)

In addition to the Safe Return annuity, plaintiff also purchased an "IncomeSustainer Plus" rider, which provides a potentially enhanced death benefit, as well as the ability to take guaranteed lifetime withdrawals. (Declaration of Maureen Woolever in Support of Great American Life Insurance Company's Motion for Summary Judgment ("Woolever Decl.") ¶ 7; Evans Decl., Exh. 2.) In order to take full advantage of the enhanced death benefit feature, the owner must avoid taking <u>any</u> withdrawals (including 10% penalty free withdrawals) from the annuity beyond those permitted under the rider. (Hollender Decl. ¶ 7; Woolever Decl. ¶ 9.) The rider limited Ms. Goertzen's permissible withdrawals to her "Required Minimum Distributions" (RMDs), which are the amounts required by IRS rules to be withdrawn from a contract funded with "qualified" funds from an IRA, once the owner reaches age 70½. (Hollender Decl. ¶ 6.) Mr. Hollender arranged that the RMD would be calculated and withdrawn automatically every year by Great American. (*Id.* ¶ 11.) Mr. Hollender explained to Ms. Goertzen that she should not take any withdrawals from the policy beyond the RMDs, in order to maintain the enhanced death benefit. (*Id.* ¶ 7.) Consistent with that advice, plaintiff did not take any withdrawals other than RMDs until 2015. (Woolever Decl. ¶ 10.)

**D. The Cover Page Of Ms. Goertzen's Policy Included Disclosures Relating To Surrender Charges And The "Free Look" Period.**

The California Insurance Code requires certain disclosures on the cover page of contracts purchased by individuals 60 and over. Section 10127.13 of the Insurance Code requires that the cover page include a disclosure of the location of surrender charges within the contract. The statute does not dictate the specific terms of the disclosure. The cover page of Ms. Goertzen's policy read:

> **SURRENDER CHARGE INFORMATION MAY BE FOUND IN THE SURRENDER AND WITHDRAWALS SECTION OF THIS CONTRACT AND ON THE CONTRACT SPECIFICATIONS PAGE.**

(SMF 16.) The body of Ms. Goertzen's policy and associated riders include detailed information about surrender charges, including when they apply and when they may be waived. (Evans Decl.,

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Exh 2.) The Contract Specifications Page includes a table of charges entitled the "Early Withdrawal Charge Schedule," which provides information on the surrender charge percentages. (SMF 17.) The surrender charge table provides as follows:

| *Contract Year | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11+ |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Early Withdrawal Charge Rate* | 10% | 9% | 8% | 7% | 6% | 5% | 4% | 3% | 2% | 1% | 0% |

*The Early Withdrawal Charge Rate will decrease by 1/12th of 1% on each monthly anniversary of the Contract Effective Date.

Section 10127.10 requires that the face page disclose a 30-day free look period for purchasers 60 and over, during which the contract may be returned for a full refund of the premium. The statute sets out a form for the disclosure, to be printed in 12 point type:

> **IMPORTANT: YOU HAVE PURCHASED A LIFE INSURANCE POLICY OR ANNUITY CONTRACT. CAREFULLY REVIEW IT FOR LIMITATIONS. THIS POLICY MAY BE RETURNED WITHIN 30 DAYS FROM THE DATE YOU RECEIVED IT FOR A FULL REFUND BY RETURNING IT TO THE INSURANCE COMPANY OR AGENT WHO SOLD YOU THIS POLICY. AFTER 30 DAYS, CANCELLATION MAY RESULT IN A SUBSTANTIAL PENALTY, KNOWN AS A SURRENDER CHARGE.**

Cal. Ins. Code § 10127.10(c). The cover page of plaintiff's policy contained the following language in 12-point bold font:

> **IMPORTANT: YOU HAVE PURCHASED AN ANNUITY CONTRACT. CAREFULLY REVIEW IT FOR LIMITATIONS. IF ON THE DATE OF ISSUE YOU ARE AGE 60 OR OLDER, THIS CONTRACT MAY BE RETURNED WITHIN THIRTY (30) DAYS FROM THE DATE YOU RECEIVED IT FOR A FULL REFUND BY RETURNING IT TO THE INSURANCE COMPANY OR PRODUCER WHO SOLD YOU THIS CONTRACT. AFTER THIRTY (30) DAYS, CANCELLATION MAY RESULT IN A SUBSTANTIAL PENALTY, KNOWN AS A SURRENDER CHARGE**.

(SMF 14.) This language is identical to the language required by section 10127.10, except that the third sentence starts with the words: "If on the date of issue you are age 60 or older…" At the top of the page there is a separate notice regarding a 20-day free look period, directed at all other purchasers, which is in a smaller and lighter font than the disclosure to purchasers 60 and over. (SMF 15.)

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**E. Ms. Goertzen Does Not Recall Reviewing Her Great American Policy Or Any Other Details Of Her Decision To Purchase the Policy.**

At deposition, Ms. Goertzen testified that she had no recollection of reviewing or reading any part of her Great American contract. (SMF 18.) She also could not recall any discussion she had with Mr. Hollender about the policy, other than a vague memory about it having a death benefit, or any other details of the sale. (SMF 19.) She did not recall wanting to return the annuity, during the free look period or otherwise. (SMF 20.)

**F. Ms. Goertzen Alleges That She Was Injured Because The Disclosures On The Cover Page Of Her Annuity Did Not Comply With The Insurance Code**

On December 1, 2015, after she had executed a power of attorney permitting her daughter to pursue litigation against Great American, and after her daughter had retained plaintiff's counsel, Ms. Goertzen withdrew $3,326.00 from her annuity. (SMF 13.) Because this resulted in more than 10% of the account value being withdrawn in a single year, Ms. Goertzen was assessed a surrender charge of $136.88. (*Id.*) Plaintiff filed her complaint within a few weeks of incurring this charge. *See* Complaint, Dkt. 1-1

Plaintiff's Complaint alleges that Great American did not comply with California Insurance Code section 10127.13 because it did not adequately disclose surrender charge information on the cover page of Ms. Goertzen's Great American annuity. Dkt. 1-1 ¶¶ 25-27. Plaintiff alleges that although the cover page contains information about the location of surrender charge information, it contains a statement that refers the policyholder "to the wrong pages, to pages not listed in the table of contents, and to pages without surrender information." *Id.* ¶ 25. Plaintiff claims that the $136.88 surrender charge she was assessed was "illegal" because of the inadequate disclosure on the cover page. *Id.* ¶ 28. She does not allege that she was misled by the disclosure relating to surrender charges.

Plaintiff alleges that Great American violated section 10127.10, because her policy "did not include the required warning about a 30-day free look procedure." *Id.* ¶ 23. Although plaintiff acknowledges that the face page contained "a statement about the 30-day free look procedure," plaintiff claims that the notice did not comply with Cal. Ins. Code § 10127.10 because the disclosure

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

"diverged from the statutory language, and confusingly refers to a 20-day free look period, and separately to a 30-day free look period" *Id.* ¶ 23. She does not allege that she was deceived or confused by the disclosure.

Plaintiff asserts two claims against Great American: (1) violation of the "unfair" and "unlawful" prongs of California's Unfair Competition Law ("UCL"), and (2) financial elder abuse. *See id.* ¶¶ 51-66. Plaintiff specifically alleges that she does not assert any claims based on fraud. *Id.* ¶ 7.

## IV. ARGUMENT

### A. Legal Standard

A court shall grant summary judgment if the movant shows that (1) there is no genuine dispute as to any material fact; and (2) the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The non- moving party cannot avoid summary judgment by resting on mere allegations or allusions to facts, but instead must offer specific material evidence. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). A non-movant cannot defeat summary judgment by claiming a lack of recollection of events. *See Fed. Election Comm'n v. Toledano*, 317 F.3d 939, 950-951 (9th Cir. 2003). Rather, the non-moving party "must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Lujan*, 497 U.S. at 888 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252(1986)).

### B. Ms. Goertzen Lacks Standing To Maintain A Claim Under the UCL.

The undisputed facts demonstrate that plaintiff cannot show that the allegedly inadequate disclosures had any effect on her decision to purchase her annuity. There is no evidence that she read the disclosures or that she would have acted any differently if the disclosures conformed to plaintiff's view of what the statutes require. The undisputed evidence regarding her purchase shows that Ms. Goertzen understood that the product had surrender charges, because her agent explained them to her before she decided to purchase the annuity. She therefore cannot identify any injury that can be traced to the cover page disclosures. Ms. Goertzen therefore lacks standing under the UCL, and thus summary judgment must be granted.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

### 1. A UCL Plaintiff Must Establish That They Have Suffered An Injury "As A Result of" The Alleged Unfair Practice.

To establish standing under the UCL, a plaintiff must show that he or she has "suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. To meet this requirement, plaintiff must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that that economic injury was the result of, i.e., *caused by*, the unfair business practice . . . that is the gravamen of the claim." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011); *see also In re Tobacco II Cases*, 46 Cal. 4th 298, 306 (2009). To show that they were injured "as a result of" an allegedly unfair or unlawful practice, the plaintiff must establish a "causal connection" between the UCL violation and the economic injury. *Kwikset*, 51 Cal. 4th at 324-26.

A mere statutory violation does not confer UCL standing—the plaintiff must still show injury resulting from the statutory violation. *See Peterson v. Cellco Partnership*, 164 Cal. App. 4th 1583, 1590-93 (2008) (plaintiffs lacked standing to bring a UCL claim premised on an alleged violation of the Insurance Code); *Turcios v. Carma Laboratories, Inc.*, 296 F.R.D. 638, 644 (C.D. Cal. 2014) (plaintiff alleging UCL claim for violation of "slack fill" laws lacked standing absent evidence he relied on the packaging).

### 2. The UCL's Standing Requirement Applies To Claims Under The "Unlawful" Prong Of The UCL.

Where a UCL claim is premised on a misrepresentation or nondisclosure, proof of causation requires proof that the plaintiff relied on the alleged misrepresentation or omission. *Tobacco II*, 46 Cal. 4th at 326. Plaintiff bears the burden of establishing that "the defendant's misrepresentation or nondisclosure was an immediate cause of the plaintiff's injury-producing conduct." *Id.* This requirement may be satisfied by a showing that if the misrepresentation or omission had not been made, the plaintiff "in all reasonable probability would not have engaged in the injury-producing conduct." *Id.* (quoting *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1110-11 (1993)). Where, as here, a plaintiff premises a UCL claim on an omission or nondisclosure of information, they can establish reliance by showing that "had the omitted information been disclosed one would have been aware of

it and behaved differently." *Phillips v. Apple, Inc.*, 2016 WL 5846992, at *7 (N.D. Cal. Oct. 6, 2016) (quoting *Mirkin*, 5 Cal. 4th at 1093).

The causation and reliance requirements apply to UCL claims brought under the "unlawful" prong of the UCL as well. The "as a result of" language in section 17204 was added by Proposition 64, which was intended to limit private enforcement actions by adding a standing and causation requirement. *Tobacco II*, 46 Cal. 4th at 326. In light of this intent, Courts have applied the same standing and causation requirements to "unlawful" claims. *Hale v. Sharp Healthcare*, 183 Cal. App. 4th 1373, 1385 (2010). A plaintiff lacks standing to assert a claim under the UCL for unlawful conduct if he or she "would have suffered the same harm whether or not a defendant complied with the law." *Orcilla v. Big Sur, Inc.*, 244 Cal. App. 4th 982, 1013 (2016) (quoting *Jenkins v. JPMorgan Chase Bank, N.A.*, 216 Cal. App. 4th 497, 522 (2013)); *Daro v. Superior Ct. of San Francisco*, 151 Cal. App. 4th 1079, 1099 (2007).

Courts require a showing of causation and reliance where the alleged "unlawful" conduct involves an alleged violation of a statute designed to protect consumers from being deceived or misled into transactions. *See Kwikset,* 51 Cal. 4th at 326 n. 9 (pointing out that a UCL unlawful prong claim based on "statutory provisions [that] simply codify prohibitions against certain specific types of misrepresentations" fundamentally rests on a fraud theory and, therefore, requires proof of reliance); *Kosta v. Del Monte Foods, Inc.*, 308 F.R.D. 217, 230-31 (N.D. Cal. 2015) (actual reliance required under UCL's unlawful prong where plaintiffs' theory was that defendant deceived consumers); *In re iPhone Application Litig.*, 6 F. Supp. 3d 1004, 1013 (N.D. Cal. 2013) (concluding actual reliance requirement applied to plaintiffs' claims under the UCL's unlawful and unfair prongs where gravamen of plaintiffs' claims was that defendant's misrepresentations deceived plaintiffs).

**3. Ms. Goertzen's Claims That Great American Failed To Comply With Disclosure Requirements Are Premised On Deception, And Therefore Require Proof Of Reliance.**

Plaintiff attempts to circumvent the standing requirement by insisting that she "does not assert any claims based on fraud. Nor does plaintiff base any of her claims on allegations that Defendant's conduct was fraudulent." Dkt. 1-1 ¶ 7. But the rest of the complaint tells a story of

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

deception, in which seniors are led to purchase unsuitable annuities through the use of inadequate disclosures. Plaintiff specifically alleges that "Defendant's conduct was likely to deceive Plaintiff, the Class, and the public by, *inter alia*, omitting or failing to properly disclose material facts and risks associated with life insurance products." *Id.* ¶ 54. Moreover, Ms. Goertzen repeatedly characterizes the business practices at issue as "deceptive," and alleges that Great American deliberately deceived putative class members into purchasing their annuities:

- "Great American uses *misleading* disclosures to discourage Seniors from cancelling their policies within the 30-day 'free look' period." *Id.* ¶ 3 (emphasis added).

- "The improper notice [about surrender charges] is intended to *mislead* the Seniors by directing them to the wrong pages." *Id.* ¶ 27 (emphasis added).

- "Great American believes, probably correctly, that decreased awareness of surrender charges by its potential customers leads to greater sales of life insurance and annuities." *Id.*

- "To this day, Defendant continues to omit or fail to fully disclose all material facts and risks associated with the annuity products . . . ." *Id.* ¶ 30.
.
- "Plaintiff and the Class could not reasonably discover the *deceptive* and anti-competitive practices and did not do so until just recently." *Id.* ¶ 32 (emphasis added).

- "Defendants abused the trust of Plaintiff and the Class, had access to their financial information and *took improper steps to induce them into purchasing life insurance policies and annuities – without properly disclosing certain material facts and risks* . . ., including the existence of penalties associated with surrender." *Id.* ¶ 53 (emphasis added).

Plaintiff's claims are premised on an alleged deception, and she must therefore show actual reliance on the allegedly defective face page notices in order to have standing. *Tobacco II*, 46 Cal. 4th at 326.

Where a plaintiff's unlawful claim alleges the violation of a statute aimed at protecting consumers from being deceived or misled, the plaintiff cannot avoid the actual reliance requirement by attempting to limit her claims to "unlawful" conduct. *See, e.g.*, *Pratt v. Whole Food Market California, Inc.*, 2015 WL 5770799, at *4 (N.D. Cal. Sept. 30, 2015). In *Pratt*, for example, plaintiff alleged that defendant violated the UCL "unlawful" prong by selling food that was misbranded under the Food, Drug, and Cosmetic Act because the food labeling contained misrepresentations



REED SMITH LLP
A limited liability partnership formed in the State of Delaware

about the products' contents. *Id.* Plaintiff alleged that his claim did "not sound in fraud; instead, it allege[d] strict liability…" and therefore argued that he was injured "merely from the purchase of the misbranded products." *Id.* The court rejected this contention, concluding that, "[w]ithout a doubt, Plaintiff's theory under the unlawful prong sound[ed] in misrepresentation and deception" and thus required reliance. *Id.* at *5. Other courts have similarly rejected attempts to circumvent the reliance requirement by disavowing that their claims are based on misrepresentations. *See, e.g.*, *Maxwell v. Unilever United States, Inc.*, 2014 WL 4275712, at *8 (N.D. Cal. Aug. 28, 2014) ("Plaintiff cannot circumvent the reliance requirement by simply pointing to a regulation or code provision that was violated by the alleged label misrepresentation, summarily claiming that the product is illegal to sell and therefore negating the need to plead reliance.").

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**4. A California Court Has Applied The UCL's Standing Requirement To Alleged Violations Of Insurance Code § 10127.13.**

One state court has addressed the standing issues raised by the disclosure requirements, and concluded that a UCL claim premised on a violation of Insurance Code Section 10127.13 requires reliance. *Tabares v. EquiTrust Life Ins. Co.*, Case No. BC390915, (Super. Ct. Los Angeles County). In *Tabares*, plaintiff sought to represent a class of annuity purchasers age 65 and over on a UCL claim that EquiTrust's disclosure of surrender charges did not comply with Section 10127.13. While plaintiffs insisted that they did not need to show reliance to assert a UCL claim under the unlawful prong, the Court disagreed. After an initial order denying certification of the UCL claim, the Court heard a motion for reconsideration on the narrower issue of whether a plaintiff could proceed on their UCL claim based on an alleged violation of section 10127.13, even though they could not testify that they read or otherwise relied upon the allegedly defective disclosure. The Court denied the motion, finding that plaintiffs lacked standing: "For a class representative to have standing for purposes of pursuing a UCL unlawful prong claim for violation of Insurance Code section 10127.13, it must be shown that the class representative detrimentally relied on the insurer's alleged violation." *Tabares*, Order Denying Plaintiff's Motion for Reconsideration at 2 (Super. Ct. Los Angeles County Nov. 1, 2011) (order at Evans Decl., Ex. 7). The Court reaffirmed its ruling in a subsequent order denying another motion for reconsideration on the same issue: "The Court finds that for a class

representative to have standing for purposes of pursuing a UCL unlawful prong claim for a violation of Insurance Code section 10127.13 the class representative must rely on the insurer's alleged violation." *Tabares*, Notice of Ruling at 2 (Super. Ct. Los Angeles County July 10, 2012) (order at Evans Decl., Ex. 8).

The Court of Appeals affirmed the trial court's orders in an unpublished decision. *Tabares v. EquiTrust Life Ins. Co.*, 2015 WL 5680393 (Cal. Ct. App. Sept. 28, 2015) .[1] The Court of Appeals agreed with the plaintiffs that the cover page disclosures did not comply with section 10127.13, but nevertheless held that plaintiff s lacked standing to assert a UCL claim based on that violation. *Id.* at *12-13. The Court concluded that "absent an allegation she read the policy cover page," the plaintiffs lacked standing to assert a UCL claim alleging a violation of section 10127.13. *Id.* at *12.

**5. The Undisputed Facts Show That Great American's Disclosures Did Not Cause Any Injury to Plaintiff.**

Plaintiff cannot establish causation because she has no evidence that she would not have incurred "the same harm whether or not a defendant complied with the law." *Daro*, 151 Cal. App. 4th at 1099. Plaintiff insists that she was injured by a failure to disclose information on the cover page, but she cannot establish that if a different disclosure had been made, she "would have been aware of it and behaved differently." *Mirkin*, 5 Cal. 4th at 1093. Plaintiff cannot show that even if the disclosures used the precise language she claims the statutes require, that she would not have purchased the policy. Since plaintiff cannot recall reading any part of her policy, she cannot claim that a change to the cover page would have made her aware of any omitted information. (SMF 18.) Nor can she claim that, had she read the disclosures, she would have changed her behavior, as she has no recollection of the events leading to her purchase. Plaintiff therefore has no evidence to support her claim that she was injured by any statements Great American made on the cover page of her policy.

In addition to her inability to show that a revised cover page would have affected her decision to purchase the annuity, plaintiff cannot rebut the evidence that she was already aware of

---

[1] The Ninth Circuit permits consideration of unpublished decisions of the California courts in interpreting California law, although they have no precedential value. *See Employers Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1219, n.8 (9th Cir. 2003).

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

surrender charges well before she received her policy, and that she willingly purchased the policy with that awareness. When she purchased her much larger Aviva annuity in 2009, plaintiff expressly acknowledged that the annuity had surrender charges (which the contract called withdrawal charges), but nevertheless proceeded to purchase the policy. (SMF 2, 4.) Mr. Hollender, her agent, explained how the surrender charges worked on the Aviva annuity. (SMF 3.) Even though plaintiff was well versed in annuities by the time she purchased her Great American product, Mr. Hollender explained the charges to her before she decided to purchase the policy and again when he delivered the annuity to plaintiff. (SMF 8, 12.) He would also have referred to the charges as surrender charges, eliminating any alleged confusion over terminology. (SMF 12.)

Ms. Goertzen's purchase of the enhanced death benefit rider further establishes that she would not have considered surrender charges important to her decision. Ms. Goertzen purchased the annuity with the intent of passing the funds on to her heirs, so she did not intend to take withdrawals. (Hollender Decl. ¶ 6, Exh. 2.) Furthermore, the terms of her rider required that she take no withdrawals from the policy other than RMDs to take advantage of the enhanced death benefit, a fact explained to her by Mr. Hollender. (*Id.* ¶¶ 6-7; Woolever Decl. ¶ 9.)

### C. Plaintiff Also Lacks Standing Under Article III Because Her Injuries Are Not "Fairly Traceable" to Great American's Conduct

Even if plaintiff could show standing under the UCL, Great American would still be entitled to summary judgment because plaintiff lacks Article III standing, and this Court therefore lacks jurisdiction over plaintiff's claim. The Supreme Court recently reaffirmed that standing is a doctrine rooted in the case or controversy requirement of the Constitution, which "limits the category of litigants empowered to maintain a lawsuit in federal court . . . ." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). To establish the "irreducible constitutional minimum" of standing under Article III, a plaintiff bears the burden of satisfying three elements. *Id.* (citing *Lujan*, 504 U.S. at 560) "The plaintiff must have (1) suffered an injury in fact, (2) *that is fairly traceable to the challenged conduct of the defendant*, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (citing *Lujan*, 504 U.S. at 560-61 (emphasis added)); *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)). At summary judgment, "a plaintiff may no

longer rely on 'mere allegations,' but rather must set forth 'specific facts' supporting standing." *Lujan*, 504 U.S. at 561.

Courts refer to the second element as "causation" because it requires the plaintiff to prove there was a "substantial likelihood that the defendant's conduct caused plaintiff's injury." *Gentges v. Trend Micro Inc.*, 2012 WL 2792442, at *4 (N.D. Cal. July 9, 2012); *see also Salmon Spawning & Recovery Alliance v. Gutierrez*, 545 F.3d 1220, 1227 (9th Cir. 2008) ("the plaintiff must demonstrate a causal connection between the injury and the conduct complained of"). Just as with the UCL, where a plaintiff's claim is based on deception, the plaintiff cannot show causation under Article III if she did not rely on the statements she claims caused her harm. *See In re iPhone Application Litig.*, 6 F. Supp. 3d at 1015 (for plaintiffs' harm to be "fairly traceable" to defendant's misrepresentations under Article III, plaintiffs "must have actually relied on the misrepresentations to have been harmed by them.").

Ms. Goertzen lacks Article III standing for the same reason she lacks standing under the UCL—namely, the disclosures she challenges did not cause any actual injury. Merely alleging a violation of a statute will not support Article III standing. *Spokeo*, 136 S.Ct. at 1549. Bare violations of "procedural" statutes, which adopt " procedures designed to decrease" a risk of a particular type of injury, do not satisfy Article III. *Id.* at 1550. A violation of a procedural requirement may result in no harm. *Id.* Here, Ms. Goertzen seeks to convert alleged procedural violations of statutes designed to reduce the risk of misleading annuity sales without any evidence that she was misled, much less whether the alleged procedural violations caused her to be misled into purchasing her annuity.

**D. Plaintiff's Elder Abuse Claim Also Fails Due To A Lack Of Causation.**

Plaintiff's claim for elder abuse fail for the same reasons as her UCL claims: Ms. Goertzen cannot prove that the alleged defects in the cover page caused any injury. To prevail on her claim for violation of California Welfare & Institutions Code §§ 15600 *et seq.*, Ms. Goertzen must demonstrate that Great American is "liable" for financial elder abuse, which occurs when an entity "[t]akes, secretes, appropriates, or retains real or personal property of an elder or dependent adult to a wrongful use or with intent to defraud, or both." Cal. Welf. & Inst. Code §§ 15657.5,

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

15610.30(a)(1). "Liability" for elder abuse "includes as an element 'causation'. . . ." *Perlin v. Fountain View Mgmt., Inc.*, 163 Cal. App. 4th 657, 665 (2008) (citing *Ulloa v. McMillin Real Estate & Mortgage, Inc.*, 149 Cal. App. 4th 333, 338 (2007) ("'Causation' is an essential element of a tort action. Defendants are not liable unless their conduct. . . was a 'legal cause' of plaintiffs' injury."); *see also* Judicial Council of Cal., Civil Jury Instructions ("CACI") (2005) § 3100, entitled Financial Abuse – Essential Factual Elements (Welf. & Inst. Code § 15610.30) (claim for financial elder abuse requires proof that defendant's conduct was "a substantial factor" in causing plaintiff's harm). Great American cannot be liable for injuries it did not cause. Consequently, Ms. Goertzen cannot show that Great American is liable for financial elder abuse, and Great American is entitled to summary judgment on this claim.

## V. CONCLUSION

Plaintiff lacks standing to sue over nondisclosures in a contract she cannot recall reading. Requiring plaintiff to show that she would have acted differently if the cover page had conformed to her version of the Insurance Code is consistent with the underlying intent of the standing requirement – to limit claims to those who can show that the alleged violation actually caused their alleged injuries. Here, Ms. Goertzen cannot testify that she read the cover page or any other part of her annuity policy. She also cannot rebut evidence that she was already made aware of the subjects of the disclosures from other sources, including her insurance agent and prior experience with fixed indexed annuities. The Court should therefore grant summary judgment in favor of Great American.

DATED: November 1, 2016

REED SMITH LLP

By: /s/ Thomas A. Evans
Robert D. Phillips, Jr.
Thomas A. Evans
Rachel A. Naor
Attorneys for Defendant
Great American Life Insurance Company