Robert D. Phillips, Jr. (SBN 82639)
Email: rphillips@reedsmith.com
Thomas A. Evans (SBN 202841)
Email: tevans@reedsmith.com
Rachel A. Naor (SBN 284966)
Email: rnaor@reedsmith.com
REED SMITH LLP
101 Second Street
Suite 1800
San Francisco, CA  94105-3659
Telephone: +1 415 543 8700
Facsimile: +1 415 391 8269

Attorneys for Defendant
Great American Life Insurance Company

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| JOYCE GOERTZEN, an individual, individually and on behalf of herself and all similarly-situated persons, by and through her power of attorney BEVERLY KRAUS,<br><br>Plaintiff,<br><br>vs.<br><br>GREAT AMERICAN LIFE INSURANCE COMPANY, and DOES 1-50,<br><br>Defendants. | Case No. 4:16-cv-00240-YGR<br><br>**DEFENDANT GREAT AMERICAN LIFE INSURANCE COMPANY'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Date:     November 29, 2016<br>Time:    2:00 p.m.<br>Ctrm:    1, Fourth Floor<br><br>Honorable Yvonne Gonzalez Rogers<br><br>Compl. Filed:     December 15, 2015 |

# **TABLE OF CONTENTS**

Page

I. INTRODUCTION ..................................................................................................................1

II. ARGUMENT .........................................................................................................................3

    A. Plaintiff Has Not Established Standing Under The UCL. ............................................3

        1. Great American Has Not Conceded That Its Surrender Charges Are Unlawful. ..................................................................................................3

        2. Plaintiff's Claim That She Does Not Need To Show Reliance Because She Pleads "Straightforward Statutory Violations" Misstates The Law. ..........................................................................................4

        3. Plaintiff Must Demonstrate Reliance Because Her Claims Are Based On Allegedly Deceptive Conduct. .........................................................8

        4. Plaintiff Did Not Rely on Her Policy's Cover Page Disclosures.......................9

    B. Plaintiff's Failure To Show Causation Also Defeats Her "Unfair" Prong Claim. ..............................................................................................................................11

    C. Plaintiff Lacks Standing Under Article III Because She Has Not Shown That Her Injuries Are "Fairly Traceable" To The Cover Page Disclosures. ...............12

    D. Plaintiff's Elder Abuse Claim Fails Because She Has Not Shown Causation........................................................................................................................12

III. CONCLUSION...................................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Andrews v. U.S. Sec. Holdings, Inc.*,
    2015 WL 1238890 (C.D. Cal. Mar 17, 2015) ................................................................................ 10

*Brown v. Bank of Am., N.A.*,
    2015 WL 5163045 (D. Mass. Sept. 3, 2015) ................................................................................ 5

*Campos v. City of Merced*,
    709 F. Supp. 2d 944 (E.D. Cal. 2010) ......................................................................................... 4

*Clark v. Carmax Auto Superstores Cal., LLC*,
    2015 U.S. Dist. LEXIS 8010 (C.D. Cal. Jan. 23, 2015) ............................................................... 7

*Figy v. Amy's Kitchen*,
    2013 WL 6199503 (N.D. Cal. Nov. 25, 2013) ........................................................................ 5, 6

*Hexcel Corp. v. Ineos Polymers, Inc.*,
    681 F.3d 1055 (9th Cir. 2012) .................................................................................................. 10

*In re iPhone Application Litig.*,
    6 F. Supp. 3d 1004 (N.D. Cal. 2013) .......................................................................................... 9

*Jenkins v. Med. Labs of Eastern Iowa, Inc.*,
    880 F. Supp. 2d 946 (N.D. Iowa 2012) ..................................................................................... 10

*Kwikset Corp. v. Superior Court*,
    51 Cal. 4th 310 (2011) ..................................................................................................... 5, 8, 11

*Maxwell v. Unilever United States, Inc.*,
    2014 WL 4275712 (N.D. Cal. Aug. 28, 2014) ............................................................................ 5

*Medrazo v. Honda of North Hollywood*,
    205 Cal. App. 4th 1 (2012) ...................................................................................................... 4, 5

*Ogden v. Bumble Bee Foods, LLC*,
    2014 WL 27527 (N.D. Cal. Jan. 2, 2014) ................................................................................ 8, 9

*Rand v. American National Insurance Co.*,
    717 F. Supp. 2d 948 (N.D. Cal. 2010) ......................................................................................... 6

*Salmon Spawning & Recovery Alliance v. Gutierrez*,
    545 F.3d 1220 (9th Cir. 2008) .................................................................................................. 12

*Sigala v. CarMax Auto Superstores, LLC*,
    2015 WL 418526 (E.D. Cal. Jan. 30, 2015) ................................................................................ 8

*Stelzer v. Carmax Auto Superstores Cal. LLC*,
  2013 WL 6815029 (S.D. Cal. Dec. 20, 2013) .................................................................................. 7

*In re Tobacco II Cases*,
  46 Cal. 4th 298 (2009) ............................................................................................................. 2, 12

*Vaccarino v. Midland Nat'l Life Ins.*,
  2012 U.S. Dist. LEXIS 52499 (C.D. Cal. Apr. 13, 2012) ............................................................. 6

*Zoom Electric, Inc. v. Electrical Workers IBEW Local 595*,
  989 F. Supp. 2d 912 (N.D. Cal. 2013) ......................................................................................... 5

**Statutes**

Cal. Bus. & Prof. Code § 17204 ........................................................................................................ 6

Cal. Ins. Code § 10127.10 ......................................................................................................... 3, 4, 5

Cal. Ins. Code § 10127.13 ...................................................................................................... 3, 4, 5, 6

Cal. Veh. Code § 11713.18 ............................................................................................................... 7

Cal. Veh. Code § 24014 .................................................................................................................... 5

**Rules**

Fed. R. Evid. 611(c) ........................................................................................................................ 10

## I. INTRODUCTION

Plaintiff's opposition mischaracterizes the law and the facts in an attempt to distract from her lack of any evidence that her alleged "injuries" were caused by the allegedly noncompliant disclosures at the center of her complaint. Plaintiff repeatedly insists that the disclosure statutes she relies on render any surrender charges "unlawful." They do not. The statutes provide for the disclosure of certain information on the cover page; they do not state that any variance in those disclosures renders the collection of surrender charges "unlawful." In order to demonstrate standing under California's Unfair Competition Law ("UCL"), it is not enough to allege a violation of law and then label the entire transaction "illegal." Plaintiff must show that she was injured as a result of that violation – that if the disclosures on the first page of the policy read differently, she would have changed her mind. The undisputed evidence confirms that she cannot make that showing.

Plaintiff also claims to be a victim of "undisclosed surrender penalties," despite unrebutted evidence that her agent explained how the surrender charges on her policy worked, including the amount and duration of those charges, *twice*. Ms. Goertzen was already familiar with surrender charges from her purchase of an Aviva annuity two years earlier. When she was considering the Great American annuity, her agent, Michel Hollender, explained the amount, duration and operation of the surrender charges before she submitted her application. Mr. Hollender explained the charges a second time when he delivered the policy. Furthermore, the policy itself disclosed that it had surrender charges, and directed the reader to a chart setting out the amount and duration of charges. Plaintiff's "nondisclosure" argument devolves into an argument over the pagination of the policy, the table of contents, and definitions, without considering whether that material had any effect on Ms. Goertzen.

Plaintiff has no choice but to insist that she "is not required to demonstrate causation or reliance" because she cannot produce any admissible evidence that she would have behaved any differently if the cover page disclosures conformed to her understanding of the statutes. Instead, plaintiff attempts to shift her burden to Great American and launches baseless and ineffective attacks against her agent's credibility. Plaintiff claims to have testimony that she would have not purchased her annuity if she were aware of the surrender charges, but this "testimony" is cobbled together from

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

her daughter's baseless speculation about what plaintiff may have known or understood five years ago, and Ms. Goertzen's one-word answer to her counsel's leading question at deposition. Even if this argument in the guise of evidence were admissible to show that Ms. Goertzen was unaware of the surrender charges, it still begs the question of how a change to the cover page would have had any effect on Ms. Goertzen, since she has no recollection of reading the cover page or any other part of her contract. Even reading the cover page alone would not suffice to show causation, as she would then have to testify that she proceeded to read additional pages and suffered the precise form of confusion posited by her counsel.

An inquiry into reliance focuses on "the plaintiff's injury-producing conduct," and whether defendant's allegedly unlawful practice was an immediate cause of that conduct. *In re Tobacco II*, 46 Cal. 4th 298, 326 (2009). Given the absence of any evidence in the record that the disclosures on the cover page had any effect on Ms. Goertzen's decision, plaintiff cannot show that she was injured "as a result of" any alleged defects in the cover page of the policy. The unrebutted evidence shows that even if the cover page read exactly as plaintiff interprets the requirements of the statute, plaintiff (who had already been told about surrender charges and intended on leaving the funds to grow for the benefit of her heirs) would have still purchased the annuity. She would have been exposed to the same surrender charges and the same restrictions on withdrawals that she now claims as injury.

Plaintiff's view of UCL standing goes beyond strict liability; even strict liability cases require proof of causation. Instead, plaintiff advocates for a rule that would permit recovery whenever a plaintiff could identify any procedural infraction, regardless of whether it had any impact on the plaintiff's behavior. The California Supreme Court has rejected such a broad construction as contrary to Proposition 64's express intent of limiting claims under the UCL to cases involving actual injury. Federal courts, including the courts in this district, have followed the Supreme Court's lead and rejected attempts to avoid the element of causation by labeling a transaction "illegal." Such a rule also conflicts with the U.S. Supreme Court's warning in *Spokeo* against relying on mere "procedural violations" of statutes to find standing where there is no injury traceable to those violations.

California voters passed Proposition 64 to counteract the very type of lawsuit plaintiff brings

here – a lawsuit based on alleged injuries that were not incurred as a result of the defendant's conduct. A plaintiff must show causation, meaning that she must show that she would not have suffered the same harm if the defendant had complied with the law. In this case plaintiff must show—with admissible evidence—that she would not have kept her Great American policy if the disclosures she challenges were somehow more adequate. Because plaintiff has not controverted Great American's evidence that plaintiff was informed about surrender charges at the time she purchased her policy and that she cannot recall ever reading the disclosures on her policy's cover page, plaintiff cannot show that any disclosures Great American made about her policy's surrender charges affected her decision to keep her policy. Great American is therefore entitled to summary judgment.

## II.  ARGUMENT

### A.  Plaintiff Has Not Established Standing Under The UCL.

#### 1.  Great American Has Not Conceded That Its Surrender Charges Are Unlawful.

Plaintiff mischaracterizes Great American's motion as admitting that its conduct, including collecting surrender charges, violated the law. (Opp. at 6:21-23.) Great American's motion did not address compliance with the disclosure statutes cited in plaintiff's complaint, because the motion was limited to the issue of standing. The cover page disclosures are an exhibit to Great American's moving papers, and demonstrate that the cover pages did include disclosures pursuant to sections 10127.10 and 10127.13. (Evans Decl., Ex. 2 at 007.) Great American does dispute plaintiff's claim that its collection of surrender charges is "unlawful" in the event the Court finds any deficiencies in the disclosures on the cover page.

Plaintiff's attempt to manufacture a concession by Great American that it illegally collected surrender charges demonstrates the extent that her theory departs from accepted concepts of liability. Under plaintiff's argument, all that matters is whether she can identify *any* violation of the code in the policy documents, at which point the policy, and all charges under it, become illegal. So a disclosure that fails to mention several penalties (as in *Rand*) leads to the same result as a policy that has no disclosure at all, or one that varies the words slightly without altering the meaning, or one that

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

has a disclosure in 11-point type.  Plaintiff has no evidence that the Legislature or the voters of California ever intended this absurd result.

### 2. Plaintiff's Claim That She Does Not Need To Show Reliance Because She Pleads "Straightforward Statutory Violations" Misstates The Law.

Plaintiff's opposition is premised on the unsupported legal theory that as long as plaintiff can demonstrate that the disclosures in her policy varied in *any* way from the provisions of sections 10127.10 and 10127.13, she can maintain a claim under the UCL even if she cannot show that she ever read or relied on the disclosures.  Plaintiff argues that even a technical violation of either disclosure statute renders any surrender charges on the policy "illegal."  According to plaintiff, she is not required to show that the disclosures caused her injury because the illegality itself creates the injury.  Plaintiff cites no authority that supports this argument.

While plaintiff argues that *Medrazo v. Honda of North Hollywood* supports her argument that any defect in a disclosure relieves her from her burden of reliance or causation, that case does not stand for such a broad proposition.  In *Medrazo*, the statutory disclosure (consisting of a disclosure of dealer charges on a hangtag) was not provided at all.  205 Cal. App. 4th 1, 8 (2012).  Plaintiff demonstrated that she never received any information regarding the dealer charges before she made her decision to purchase.  *Id.* at 5.  In contrast to this case, in which the unrebutted evidence shows that surrender charges were disclosed to Ms. Goertzen in advance of her purchase, the testimony in *Medrazo* established that salespeople were *prohibited from disclosing* dealer charges when asked about the price of a motorcycle.  *Id.* at 7 ("The salespeople were instructed to tell the customer only the MSRP.").

Unlike the plaintiff in *Medrazo*, who did not receive any of the required disclosures before deciding to purchase her motorcycle, plaintiff indisputably received disclosures concerning her policy's surrender charges.  When plaintiff met with her agent, Mr. Hollender, to discuss purchasing her Great American annuity, they discussed surrender charges, and Plaintiff thus knew that the policy she was purchasing had surrender charges.[1]  (SMF 8.)  The cover page of plaintiff's policy

---

[1] While Plaintiff repeatedly asserts that she "does not recall" her interaction with Mr. Hollender or other events (*see* Response to SMF, Facts 2-4, 7-12), her lack of recollection cannot create a genuine issue of fact.  *See Campos v. City of Merced*, 709 F. Supp. 2d 944, 949 n.3 (E.D. Cal. 2010)

1 also had a disclosure pointing plaintiff to the surrender charge information in her policy, and the
2 policy fully disclosed the terms of the surrender charges. (SMF 16.) Thus, although the plaintiff in
3 *Medrazo* could have presented a colorable argument that, in retrospect, her failure to receive
4 disclosures affected her transaction, plaintiff has no evidence that the disclosures she challenges had
5 any effect on her decision to purchase or retain her policy.

6     *Medrazo* also does not support extending UCL standing to every plaintiff who can identify a
7 purported flaw in a statutory disclosure. The plaintiff in *Medrazo* relied on a statute that expressly
8 provided that a violation rendered the sale "unlawful." Section § 24014 of the Vehicle Code
9 expressly states that it is "unlawful" for the dealer to "sell or display" any vehicle that did not have a
10 label that disclosed the pricing information. *Medrazo*, 205 Cal. App. 4th at 4. Plaintiff cannot point
11 to a corresponding provision in relation to sections 10127.13 and 10127.10 in the Insurance Code.

12     The *Medrazo* court had no occasion to comment on whether an imperfect disclosure would
13 be unlawful because the disclosures in *Medrazo* were entirely absent. Because there was no partial
14 disclosure of dealer charges (and there was evidence that those charges were actively concealed by
15 the defendant), the court did not consider the adequacy of a partial disclosure or the effect of a
16 disclosure from another source. To the extent that *Medrazo* could be read to hold that a plaintiff
17 need not demonstrate reliance in any case under the unlawful prong, even when her theory was that
18 she suffered harm as a result of a defendant's misrepresentation or nondisclosure, many courts in this
19 district have found it at odds with *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011). *See,*
20 *e.g.*, *Figy v. Amy's Kitchen*, 2013 WL 6199503, at *3 n.1 (N.D. Cal. Nov. 25, 2013); *Maxwell v.*
21 *Unilever United States, Inc.*, 2014 WL 4275712, at *8 (N.D. Cal. Aug. 28, 2014) ("*Medrazo* does
22 not discuss *Kwikset*'s finding that actual reliance applies to claims under the unlawful prong of the
23 UCL.").

---

(inability to recall events does not create genuine issue). Plaintiff also cannot create a dispute by attackingMr. Hollender's testimony as inherently unreliable. *Zoom Electric, Inc. v. Electrical Workers IBEW Local 595*, 989 F. Supp. 2d 912, 918 n.1 (N.D. Cal. 2013) ("[C]redibility disputes are not appropriate for determination on summary judgment."); *see also Brown v. Bank of Am., N.A.*, 2015 WL 5163045, at *2-3 (D. Mass. Sept. 3, 2015) (denying motion to strike declaration in support of summary judgment and finding that proper way to challenge accuracy of statements in declaration is to introduce contradictory evidence in connection with the opposition motion).

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Plaintiff's argument that the disclosure statutes were meant to be read broadly and confer standing on anybody who incurred an "illegal" surrender fee is also unavailing. *Rand v. American National Insurance Co.*, 717 F. Supp. 2d 948 (N.D. Cal. 2010), the opinion Plaintiff cites to support her contention that the statutes must be read broadly, did not even address reliance or causation. *Id.* at 951 n.3. Plaintiff takes *Rand*'s statement regarding the remedial nature of the statute out of context. In *Rand*, the court concluded that the phrase "all associated penalties" as used in section 10127.13 was ambiguous and found that the term should be interpreted broadly to give effect to that statute's remedial purpose. *Id.* at 956. Here, however, plaintiff is advocating for a broad reading of the standing provisions of Section 17204 of the UCL, which were added with the intent of *limiting* private lawsuits, including those based on conduct that did not cause any injury. Consequently, *Rand* does not support Plaintiff's theory.[2]

Plaintiff's claim of a "public policy consensus that supports claims to move forward under the 'unlawful' prong without needing to offer evidence relating to causation and reliance" [Opp. at 10:4-5] runs counter to the state and federal decisions that require causation and reliance in cases under the "unlawful" prong. The California Supreme Court's decisions in *Tobacco II* and *Kwikset* both counsel interpreting section 17204's standing requirements consistently with the underlying intent of Proposition 64, as opposed to adopting broad readings that would effectively negate the causation requirement. Plaintiff's supposed "consensus" consists of a single unpublished trial court order on a motion to dismiss that concluded, with no analysis or evidence, that plaintiffs in that case did not need to "plead causation and reliance" because the statute was based on a public policy requiring warnings to seniors about surrender charges. *See Vaccarino v. Midland Nat'l Life Ins.*, 2012 U.S. Dist. LEXIS 52499, at *31 (C.D. Cal. Apr. 13, 2012). The court did not explain why a public policy could negate Proposition 64's causation requirement, and at least one state court has disagreed with this holding, where the evidentiary record showed that plaintiffs could not establish

---

[2] In *Rand*, Judge Illston did not address whether the plaintiff would need to establish causation and reliance to have standing to assert a UCL claim. Rand, 717 F.Supp.2d at 951 n.3 In her later decision in *Figy v. Amy's Kitchen*, however, she held that an "unlawful" claim under the UCL required a showing of reliance and causation. She expressly disagreed with *Medrazo* on the very ground that it dispensed with the causation requirement. *See Figy*, 2013 WL 6169503, at *3 n.1.

Case No. 4:16-cv-00240-YGR — 6 —

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

that the alleged nondisclosures had any impact on their behavior.  (*See* Mot. at § IV.B.4, discussing *Tabares v. EquiTrust Life Insurance Co.*)[3]

Plaintiff's argument that causation and injury "are literally one and the same" because the policies did not comply with the insurance code [Opp. at 13:20]  fares no better.  Federal courts have rejected the argument that failure to strictly comply with a statutory disclosure requirement renders the entire sale illegal, even if the failure to provide the disclosure was technically "unlawful" under the UCL.  *See, e.g.*, *Clark v. Carmax Auto Superstores Cal., LLC*, 2015 U.S. Dist. LEXIS 8010 (C.D. Cal. Jan. 23, 2015).  In *Clark*, plaintiffs alleged that defendant engaged in unlawful conduct by not providing an inspection report before plaintiffs purchased the vehicle, as mandated by California Vehicle Code § 11713.18.  *Id.* at *10-11.  After completing the purchase paperwork, they were provided with a completed inspection report.  *Id.* at *13.  While the Court agreed that the plaintiff had pleaded a violation of the Vehicle Code, it still dismissed the UCL claim because plaintiffs could not show that they had "experienced any damage from this violation of the Vehicle Code."  *Id.* at *15.  The court agreed that plaintiffs failed to show that the late disclosure had some effect on the amount of money they paid for their vehicle.  *See id.* at *15-16 ("As CarMax points out, for Plaintiffs to argue that they were damaged by this would require the Court to accept that 'receiving a list of all the components inspected <u>after</u> deciding to buy the vehicle but <u>before</u> completing the sale would somehow have made them <u>less</u> willing to pay the agreed purchase price.'").  Other courts have also concluded that plaintiffs lacked standing on similar facts.  *See Stelzer v. Carmax Auto Superstores Cal. LLC*, 2013 WL 6815029, at *3 (S.D. Cal. Dec. 20, 2013) (finding plaintiff who alleged violation of Vehicle Code based on incomplete and untimely inspection report lacked standing because she pled "a violation without any discernable injury," rendering her legal theory "an absurd elevation of procedure over substance, and one that [wa]s blind to actual damages");

---

[3] Plaintiff's opposition states that Great American "misleadingly omits" that the trial court orders from *Tabares* were superseded by an appellate decision.  This is not so.  Great American cited to the unpublished appellate decision affirming the trial court's standing rulings in its brief, and clearly designated the decision as unpublished. (Memo. at 12:5-6.)  Great American does not contend that these unpublished orders of a state trial court have precedential value.  Similarly, the unpublished federal trial court opinion relied upon by plaintiff (*Vaccarino*) has no precedential value.

*Sigala v. CarMax Auto Superstores, LLC*, 2015 WL 418526, at * (E.D. Cal. Jan. 30, 2015) (finding no standing where plaintiff did not plead "more than the technical violation of failure to provide the required certificate.")

Like the plaintiffs in *Clark*, *Stelzer*, and *Sigala*, plaintiff cannot establish causation by merely alleging "unlawful" conduct—she must still show a causal connection between the disclosures and her payment of a surrender charge.  Because plaintiff cannot make the requisite showing of causation, Great American is entitled to summary judgment.

### 3. Plaintiff Must Demonstrate Reliance Because Her Claims Are Based On Allegedly Deceptive Conduct.

Plaintiff tries to dismiss *Kwikset*, *Tobacco II*, and *Kosta*, which all held that a UCL plaintiff whose claims are based on deception must show causation and reliance, as "false advertising cases." This distinction is arbitrary and ignores the scope of those holdings, which apply to alleged violations of laws intended to protect consumers from deceptive or misleading sales.  In each case, the court held that the plaintiff must prove causation as well as a violation of law.  In *Kwikset*, the court looked past the claim of "unlawful" conduct and examined the conduct underlying the complaint to determine what showing was necessary to prove causation.  51 Cal. 4th at 326-27.  In cases alleging prohibitions against deceptive conduct, such as false statements made on a product label, plaintiffs have to "demonstrate actual reliance on the allegedly deceptive or misleading statements…" in order to show that they suffered injury "as a result of" the statement they challenged.  *Id.* at 326.

Plaintiff's attempt to characterize her claims as "entirely straightforward statutory violations" [Opp. at 7:24], is belied by her inability to discuss her claims without accusing Great American of deceptive and misleading acts.  After alleging that Great American's sales practices are deceptive throughout her complaint, plaintiff admits in her opposition that the "type of misrepresentations and statutory violations made by Defendant are the type that would mislead seniors into buying annuities that they otherwise would refuse to purchase" and that the statutes "were passed to prevent exactly this type of misleading sales tactic."  (Opp. at 14:19-22.)  Courts agree that a UCL claim based on a failure to make a disclosure required by law still requires a showing of reliance.  *See, e.g.*, *Ogden v.*

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

*Bumble Bee Foods, LLC*, 2014 WL 27527, (N.D. Cal. Jan. 2, 2014) (UCL claim based on defendant's failure to include mandatory disclosures regarding fat and cholesterol content required showing of reliance). *Id.* at *3, *7. The reasoning of *Kwikset*, *Tobacco II*, and *Kosta* therefore apply to this case, and Plaintiff must show that she reviewed and relied on the disclosures in order to have standing.

### 4. Plaintiff Did Not Rely on Her Policy's Cover Page Disclosures.

Great American has submitted undisputed evidence that Plaintiff cannot recall ever reading her policy. (SMF 18.) Plaintiff therefore cannot, and does not, claim that she ever reviewed or relied on the text of the cover page disclosures she challenges in this lawsuit, and has no evidence to demonstrate any form of actual reliance. Plaintiff has not created a genuine dispute as to her agent's testimony that he explained the applicable surrender charges, including their duration, twice. Nor has she disputed the evidence that the surrender charges would have had little impact on her decision, based on her declared intent to use the annuity and its enhanced death benefit as a vehicle for passing the funds on to her heirs. Plaintiff also cannot avail herself of an "inference of reliance" in this case, as she argues in her opposition, because an inference of reliance "cannot arise for misrepresentations Plaintiffs did not see." *In re iPhone Application Litig.*, 6 F. Supp. 3d 1004, 1026 (N.D. Cal. 2013).

Plaintiff attempts to craft some form of causation by claiming that had she known about the surrender charges on the policy, she would never have purchased it.[4] This claim is founded on plainly inadmissible evidence, however. Plaintiff cites repeatedly to the purported "fact" that she

---

[4] While plaintiff asserts that deferred annuities are "often unsuitable investments," she offers no evidence that supports this claim. (Plaintiff's AMF 1). Nor does Ms. Goertzen contend that the annuity she purchased was unsuitable. Ms. Goertzen does not raise a genuine dispute as to the fact that when she paid $33,540.63 to purchase her annuity in 2011, her net worth exceeded $500,000.00 and the purchase would leave her sufficient liquidity to cover her living expenses. (SMF 9-10). While Great American provided declarations that provided further discussion of how the annuity met Ms. Goertzen's needs and the procedures it follows to ensure that the annuities are suitable for its policyholders, plaintiff dismissed this information as a "red herring," confirming that suitability was not at issue. (Response to SMF, Facts 9, 13) (objecting to Seger and Woolever Declarations).

would have never purchased the policy had she known of the surrender charges. To support this "fact," however, Plaintiff cites only the declaration of Ms. Goertzen's daughter and Ms. Goertzen's one word response to a leading question by her counsel. (*See* Response to SMF, Additional Material Fact (AMF ) 23.) Neither of these statements is admissible to oppose summary judgment.

Ms. Kraus's declaration is inadmissible because she lacks personal knowledge. Ms. Kraus cannot testify regarding her mother's understanding of the annuity policy or any of the events relating to the annuity purchase because she was not present during the sale and had no involvement in the transaction. (*See* Declaration of Thomas A. Evans in Support of Great American Life Insurance Company's Reply in Support of Summary Judgment ("Evans Reply Decl."), Ex. 2 at 6:19-7:4.) Ms. Kraus admits in her declaration that she was unaware of the annuity at the time it was sold. (*See* Kraus Declaration ¶ 4.) At deposition, Ms. Kraus also admitted that she had no knowledge of the existence of the annuity until 2015.[5] (Evans Reply Decl., Ex. 2 at 7:5-7:7.) Declarations not based on personal knowledge are inadmissible and cannot raise a genuine issue of material fact on summary judgment. *Hexcel Corp. v. Ineos Polymers, Inc*., 681 F.3d 1055, 1063 (9th Cir. 2012).

Plaintiff also relies heavily on her "testimony" that she would not have purchased the policy if she had known about surrender charges. In reality, plaintiff's testimony was a one-word answer – "No"– in response to her own counsel's leading question. (Ingrid Evans Declaration, Ex. B at 46:20-24.) A leading question by a party's own counsel is inadmissible.[6] Fed. R. Evid. 611(c). Plaintiff therefore cannot rely on her counsel's leading question to defeat summary judgment. *See Andrews v. U.S. Sec. Holdings, Inc.*, 2015 WL 1238890, at *12 (C.D. Cal. Mar 17, 2015); *Jenkins v. Med. Labs of Eastern Iowa, Inc.*, 880 F. Supp. 2d 946, 958 n.4 (N.D. Iowa 2012). The value of the

---

[5] Ms. Kraus's declaration also overstates her role as power of attorney. Although she suggests that she has a power of attorney over Ms. Goertzen's financial affairs, her power of attorney is limited to the prosecution of this case against Great American, and was only recently signed after plaintiff had retained counsel. (SMF 13). Ms. Goertzen confirmed at deposition that she manages her financial affairs, and has not granted a power of attorney for that purpose. (Evans Reply Decl., Ex. 1 at 40:17-41:16.)

[6] Plaintiff omits the page of Ms. Goertzen's deposition following her answer, which confirms that counsel for Great American objected to the question as leading. (Evans Reply Decl., Ex. 1 at 47:1.)

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

answer is further eroded by Ms. Goertzen's more general testimony that she had no recollection of her purchase, as well as the unrebutted testimony that her agent discussed the surrender charges with her twice. (SMF 8, 12.) To the extent Ms. Goertzen's answer had any substance independent of her attorney's question, it reflects hindsight informed by the advice of counsel, not her state of mind at the time of the purchase.

Plaintiff's extensive reliance on Ms. Kraus's declaration and her response to counsel's leading question throughout her response to Great American's Separate Statement belies her inability to create a genuine issue of fact regarding causation. (Response to SMF, Facts 2-4, 7-12, 19-21.) The remainder of her alleged "evidence" consists of the argument of counsel, claims that Ms. Goertzen has no recollection of events, or speculative attacks on Mr. Hollender's credibility. None of this matter constitutes admissible evidence, and none of this matter can create a genuine issue of fact.

Even if plaintiff's testimony were admissible, it would get her nowhere because she does not testify that a different disclosure on the cover page would have affected her behavior. Plaintiff first argues that "[h]ad she understood the extent of the surrender penalties, she would not have submitted the application." (Opp. at 15:5-6.) This cannot be true *because Ms. Goertzen would not have even received the disclosures until after submitting an application and purchasing the policy*. (SMF 9, 12). Plaintiff's other argument is that "had she understood, within 30 days of the policy being delivered to her, the extent of the surrender penalties and her right to return it penalty free, she would have returned it for a refund." (Opp. at 15:6-8.) Plaintiff does not state that the source of her alleged confusion was the disclosures—and she cannot, because she does not recall reading them. Nor could the cover page disclosures realistically have caused plaintiff any confusion. In order to be misled in the manner plaintiff alleges, she would have had to not only read the cover pages (which disclose the existence of surrender charges), but also read the sections identified in the disclosures, conclude that there were no surrender charges, then proceed to retain the annuity. Plaintiff does not present evidence, admissible or otherwise, that would support this sort of showing.

**B. Plaintiff's Failure To Show Causation Also Defeats Her "Unfair" Prong Claim.**

The causation requirement applies to all prongs of the UCL. *Kwikset Corp. v. Superior*

*Court*, 51 Cal. 4th 310, 322 (2011); *see also In re Tobacco II Cases*, 46 Cal. 4th 298, 306 (2009). Plaintiff therefore does not have standing under the "unfair" prong of the UCL for the same reason that she does not have standing under the "unlawful" prong—because she cannot show causation or reliance.

### C. Plaintiff Lacks Standing Under Article III Because She Has Not Shown That Her Injuries Are "Fairly Traceable" To The Cover Page Disclosures.

Plaintiff's argument regarding Article III standing is almost entirely devoted to demonstrating that plaintiff suffered economic injury in the form of a surrender charge. Plaintiff has not established standing under Article III, though, for the same reasons she has not established standing under the UCL: she has not presented any evidence of a causal connection between the surrender charge she incurred and the allegedly defective disclosures. *See Salmon Spawning & Recovery Alliance v. Gutierrez*, 545 F.3d 1220, 1227 (9th Cir. 2008) ("the plaintiff must demonstrate a causal connection between the injury and the conduct complained of").

### D. Plaintiff's Elder Abuse Claim Fails Because She Has Not Shown Causation.

Great American included plaintiff's elder abuse claim in its motion because it is subject to the same causation and standing arguments as her UCL claim. Plaintiff's attempt to argue other elements of her cause of action for elder abuse are beyond the scope of the standing issues presented in this motion. Plaintiff's claim for elder abuse fails because plaintiff has not shown that Great American's conduct was a substantial factor in causing her harm. Plaintiff has not shown that she was deceived or misled into purchasing her annuity as a result of the allegedly defective disclosures, and her attempt to label the entire transaction "illegal" lacks support in the underlying statute.

### III.   CONCLUSION

While Plaintiff argues her claims are based on specific disclosure statutes, permitting her claims to go forward would effectively undermine the standing requirements of both the UCL and Article III by simply labeling an entire transaction as "illegal," regardless of whether the allegedly unlawful conduct had any effect on the plaintiff's decisions. This case asks this Court to find standing in a true "no injury" case, in which the plaintiff can sue over defects in disclosures that she has never seen, where the unrebutted evidence shows that the substance of the disclosures was

1  explained to her twice, and where the plaintiff confirmed an intent to not take any withdrawals that
2  would have triggered the surrender charges at issue.  Plaintiff does not and cannot show that a
3  change to the disclosures that she did not read would have affected her behavior.  The Court should
4  therefore grant summary judgment in favor of Great American.

DATED:  November 15, 2016                REED SMITH LLP

By: /s/ Thomas A. Evans
    Robert D. Phillips, Jr.
    Thomas A. Evans
    Rachel A. Naor
    Attorneys for Defendant
    Great American Life Insurance Company