**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **JOYCE GOERTZEN,**<br>PLAINTIFF,<br>v.<br>**GREAT AMERICAN LIFE INSURANCE COMPANY,**<br>DEFENDANT. | **CASE NO.** 16-cv-00240-YGR<br>**ORDER DENYING SUMMARY JUDGMENT**<br>Dkt. No. 36 |

Plaintiff Joyce Goertzen brings the instant putative class action alleging claims for violation of California Business & Professions Code section 17200 *et seq.*, California's Unfair Competition Law ("UCL"), and the financial elder abuse provisions of California Welfare and Institutions Code section 15600 *et seq*. Plaintiff alleges that defendant Great American Life Insurance Company ("Great American") engaged in systematic unlawful sales practices in connection with sales of individual life insurance and annuity contracts to senior purchasers in California. Plaintiff alleges that Great American policies contain hidden penalties associated with surrender of the policy prior to maturity, which were not disclosed consistent with California Insurance Code sections 10127.10 and 10127.13. The complaint herein was originally filed in the Superior Court of the State of California, County of Alameda, and defendants removed to this Court on the grounds that original jurisdiction under 28 U.S.C. section 1332 and the Class Action Fairness Act (CAFA).

Defendant Great American now moves for summary judgment on both claims, contending

that plaintiff cannot establish that she has standing either under Article III of the United States Constitution or under section 17204 of the UCL because she cannot show that the alleged unlawful conduct caused her alleged injuries.

Having carefully considered the papers submitted, the admissible evidence[1], and the pleadings in this action, and for the reasons set forth below, the Court **DENIES** the Motion for Summary Judgment.

**I.  SUMMARY OF FACTS**

In 2011, when plaintiff Joyce Goertzen was 80 years old, she purchased a Great American fixed indexed deferred annuity from an independent insurance agent, Michel Hollender. (Thomas Evans Decl., Exh. 2.) A deferred annuity is a financial insurance product with a long-term maturation period. The Great American fixed indexed deferred annuity Goertzen purchased included surrender charges, or penalties, if the owner "surrenders," *i.e.*, withdraws more than 10% of the account value of the annuity in any one year during the first ten years. The surrender charges decrease incrementally each year, but apply throughout the period.

Here, Goertzen made a withdrawal from her deferred annuity policy in 2015 and was assessed a surrender penalty of $136.88. (Ingrid Evans Decl., Exh. C at No. 22 and Exh. E.) The disclosure found on the policy jacket for Goertzen's annuity did not reference "surrender charges," but did mention "early withdrawal charges," stating:

> Please refer to your disclosure document for the Safe Return early withdrawal charge schedule. Charges are applied during the early withdrawal charge period to amounts withdrawn in excess of the 10% penalty-free withdrawal allowance; to amounts annuitized, where payments are made for less than 10 years; and to full surrenders.

(Ingrid Evans Decl., Exh. F.) The cover page of her annuity included a paragraph headed "TWENTY DAY EXAMINATION – RIGHT TO CANCEL," which stated that the contract could be cancelled with written notice until midnight of the twentieth day following receipt of the contract, "or such later date as may be required by law." (Thomas Evans, Exh. 2.) It also included the following statement:

---

[1] Goertzen improperly filed a separate objections document (Dkt. No. 41-5). *See* N.D. Cal. Civ. L.R. 7-3(a). Those objections are **STRICKEN**.

2

**IMPORTANT: YOU HAVE PURCHASED AN ANNUITY CONTRACT. CAREFULLY REVIEW IT FOR LIMITATIONS. IF ON THE DATE OF ISSUE YOU ARE AGE 60 OR OLDER, THIS CONTRACT MAY BE RETURNED WITHIN THIRTY (30) DAYS FROM THE DATE YOU RECEIVED IT FOR A FULL REFUND BY RETURNING IT TO THE INSURANCE COMPANY OR PRODUCER WHO SOLD YOU THIS CONTRACT. AFTER THIRTY (30) DAYS, CANCELLATION MAY RESULT IN A SUBSTANTIAL PENALTY, KNOWN AS A SURRENDER CHARGE.**

(*Id.*, formatting and emphasis in original.)

Hollender declares that he reviewed and explained the surrender charges that applied to the Great American annuity he sold to Goertzen. (October 24, 2016 Hollender Decl. at ¶¶ 4, 5, 8.) Goertzen testified that she did not recall Hollender explaining surrender charges. (Ingrid Evans Decl., Exh. B. [Goertzen Depo.] at 28:3-17, 34:17-35:21; 14:5-7.) Indeed, she testified that she did not recall Hollender visiting her in relation to the Great American annuity or discussing any of its terms with her. (Thomas Evans Decl., Exh. 1 [Goertzen Depo.] at 25:6-27:6.) For his part, Hollender was unable to locate the notes for Goertzen's sale, though he normally kept such notes on all his clients.[2]

## II.   APPLICABLE STANDARD

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). Any party seeking summary judgment bears the initial burden of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Material facts are those that might affect the outcome of the case. *Anderson v. Liberty Lobby. Inc.,* 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the

---

[2] Goertzen objects to defendants' submission of Hollender's October 24 declaration on the grounds that it contradicts his subsequent declaration of November 3, 2016. Hollender is an independent agent, not an employee of Great American. He declares that he normally maintains files on all his clients, but could not locate Goertzen's file. (November 3 Hollender Decl. ¶ 3.) In Hollender's later declaration, he admitted that the documents attached to the first declaration were not documents from his own files, but were instead provided to him by Great American. (*Id*. ¶¶ 3, 6.) However, the later declaration does not withdraw or directly contradict the earlier declaration that he made certain statements to Goertzen in the process of selling her the annuity. Plaintiff's objection to the declaration is **OVERRULED**.

nonmoving party. *Id.*

On an issue where the nonmoving party will bear the burden of proof at trial, as here, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 324-25. If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. *Anderson*, 477 U.S. 242, 250; *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *see also* Fed. R. Civ. P. 56(c), (e). A court may only consider admissible evidence in ruling on a motion for summary judgment. *See* Fed.R.Civ.P. 56(c)(2); *Beyene v. Coleman Sec. Servs., Inc.,* 854 F.2d 1179, 1181 (9th Cir.1988) ("It is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment."). However, when deciding a summary judgment motion, "the court does not make credibility determinations or weigh conflicting evidence." *Soremekun,* 509 F.3d at 984. Instead, the court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. *Anderson,* 477 U.S. at 255; *Hunt v. City of Los Angeles,* 638 F.3d 703, 709 (9th Cir.2011).

## III. ANALYSIS

Goertzen's UCL and financial elder abuse claims are based on Great American's failure to comply with Insurance Code sections 10127.10 and 10127.13. Great American does not dispute, for purposes of this motion, Goertzen's contention that the annuity policy she purchased violated California Insurance Code provisions by not providing the statutorily required disclosures on the jacket or cover page of the annuity contract. (*See* Reply Separate Statement at Facts 26 and 27.) Instead, Great American seeks summary judgment on the narrower question of whether such a violation would give Goertzen standing under Article III or the UCL. The Court begins with a review of the statutory requirements.

Section 10127.10 provides that annuity contracts issued for delivery to a senior citizen in California, "shall have printed on the front of the policy jacket or on the cover page a notice stating that . . . the policy may be returned by the owner for cancellation" for a period of no less than 30 days, and requires a printed notice "in 12-point bold print with one inch of space on all

4

sides, using the exact language"[3] stated in the statute. Cal. Ins. Code § 10127.10(a), (c).[4] Section 10127.13 requires any annuity containing a surrender charge include on the cover page a notice "disclosing the location of the charge, the charge time period, the charge information, and any associated penalty information, in bold 12-point type."

Next, to have standing under Article III, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins,* __U.S.__, 136 S.Ct. 1540, 1547 (2016), citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-561 (1992). Similarly, to

---

[3] The required language reads:
IMPORTANT!
You have purchased a [variable life insurance policy], [variable annuity contract], referred to below as a "policy." Carefully review it for limitations.
This policy may be returned within 30 days from the date you received it. During that 30-day period, your money will be placed in a fixed account or money-market fund, unless you direct that the premium be invested in a stock or bond portfolio underlying the policy during the 30-day period. If you do not direct that the premium be invested in a stock or bond portfolio, and if you return the policy within the 30-day period, you will be entitled to a refund of the premium and any policy fee paid. If you direct that the premium be invested in a stock or bond portfolio during the 30-day period, and if you return the policy during that period, you will be entitled to a refund of the policy's account value on the day the policy is received by the insurance company or agent who sold you this policy, which could be less than the premium you paid for the policy, plus any policy fee paid. A return of the policy after 30 days may result in a substantial penalty, known as a surrender charge.
The sentence "A return of the policy after 30 days may result in a substantial penalty, known as a surrender charge" may be deleted if the policy does not contain a surrender charge. If the policy contains both a penalty, or penalties, and a surrender charge, the sentence shall state that cancellation may result in "substantial penalties, including a surrender charge." The phrase "known as a surrender charge" may be deleted if the policy contains a penalty but no surrender charge. Whether or not a charge constitutes a surrender charge or a penalty will be determined by the nature of the charge and not the name given to the charge by the insurer. If the surrender charge is called a "withdrawal charge" in the policy, the insurer shall add the following sentence at the end of the notice:
"In this policy the surrender charge is called a 'withdrawal charge.'"
Cal. Ins. Code § 10127.10 (d).

[4] Cal. Ins. Code section 10127.10(b) states that "any provision in any policy which is in conflict with this section shall be of no force or effect."

5

establish standing under the UCL, a plaintiff must show that he or she has "suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. To meet this requirement, plaintiff must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that that economic injury was the result of, i.e., *caused by*, the unfair business practice . . . that is the gravamen of the claim." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011) (emphasis in original).

Here, Goertzen contends she suffered a concrete injury in the form of the surrender charges assessed when she took an early withdrawal from her Great American annuity, and that the injury is directly traceable to Great American's failure to make the required disclosures in connection with her purchase of the annuity. The record contains undisputed evidence that she was assessed a surrender penalty of $3,326.00. Goertzen testified at her deposition that she would not have bought the annuity if she had known at the time that there were surrender charges and penalties that would last for ten years. (Ingrid Evans Decl., Exh. B at 46:20-24.) Great American counters that Goertzen's claim is based essentially on a theory of fraud or deception by omission and therefore Goertzen must, and cannot, offer evidence that she relied on the deceptive conduct (*i.e.* the failure to make disclosures) in order to establish causation for standing purposes.

Goertzen's claim under the UCL alleges that Great American's conduct violates both the unlawful and unfair prongs of the statute. Recently, the Ninth Circuit confirmed that a plaintiff need not prove reliance in order to establish a claim for violation of the UCL's unlawful prong if the predicate legal violation does not involve fraud or deception. *See Friedman v. AARP, Inc.*, 855 F.3d 1047 (9th Cir. 2017) (violation of California Insurance Code provisions regarding solicitation of insurance was sufficient to state UCL claim under the unlawful prong); *see also Tobacco II,* 46 Cal.4th at 325 n. 17 ("[t]here are doubtless many types of unfair business practices in which the concept of reliance, as discussed here, has no application"); *Vaccarino v. Midland Nat. Life Ins., Co.*, No. CV 11-05858 CAS MANX, 2012 WL 1247137, at *10 (C.D. Cal. Apr. 13, 2012) (claims under UCL's unlawful prong "concerning Insurance Section 10127.13 do not sound in fraud and

therefore do not require plaintiffs to plead causation and reliance.").[5] Only insofar as a claim under the UCL is based upon fraudulent or deceptive conduct must a plaintiff must plead and prove reliance, regardless of the UCL prong under which it is brought. *See Kwikset Corp. v. Superior Court,* 51 Cal.4th 310, 327 (2011) (requiring proof of reliance where predicate for unlawful conduct claims was False Advertising Law and Consumer Legal Remedies Act provisions prohibiting misrepresentation, and thus "[t]he theory of the case is that Kwikset engaged in misrepresentations and deceived consumers"); *Durell v. Sharp Healthcare*, 183 Cal.App.4th 1350, 1363 (2010) (the burden of establishing "causation in a UCL action should hinge on the nature of the alleged wrongdoing rather than the specific prong of the UCL the consumer invokes"); *Moran v. Prime Healthcare Mgmt., Inc.*, 3 Cal. App. 5th 1131, 1143 (2016), *review denied* (Jan. 18, 2017) ("[t]o satisfy the causation element "under the 'unlawful' prong of the UCL, in which the predicate unlawful conduct is based on misrepresentations," a plaintiff 'must show actual reliance on the alleged misrepresentation, rather than a mere factual nexus between the business's conduct and the consumer's injury,'" citing *Durell*). Thus, Goertzen's evidence that the policy did not comply with the Insurance Code and that she suffered an economic injury is sufficient, at a minimum, to create a triable issue of fact as to her standing for a claim under the UCL's unlawful prong.

Moreover, to the extent that her claim under the unfair prong relies on allegations of deceptive conduct requiring evidence of actual reliance for causation, the standard of proof is an objective, "reasonable consumer" standard. *Friedman*, 855 F.3d 1055 (citing *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015).) Actual reliance may be "inferred from the misrepresentation of a material fact" (*Chapman v. Skype Inc.*, 220 Cal. App. 4th 217, 229 (2013) (*citing Tobacco II*, 46 Cal. 4th at 327) or where a "reasonable man would attach importance to [a

---

[5] Great American's argument relies on a California Court of Appeal decision where it was held that plaintiffs must offer evidence of individual reliance and review of their policies to establish a claim that failure to comply with the Insurance Code's disclosure language requirements constituted an unlawful business practice under the UCL. However, that decision was ordered unpublished and noncitable. *See Tabares v. EquiTrust Life Ins. Co.*, No. B254409, 2015 WL 5680393, at *13 (Cal. Ct. App. Sept. 28, 2015), *as modified on denial of reh'g* (Oct. 19, 2015) (ordered unpublished), *review denied* (Jan. 13, 2016).

7

fact's] existence or nonexistence in determining his choice of action in the transaction in question." *Friedman*, 855 F.3d 1055 (quoting *Tobacco II*, 46 Cal. 4th at 327). "The materiality of a misrepresentation is generally a question of fact unless the misrepresentation was so obviously unimportant that the trier of fact could not reasonably conclude that a reasonable person would have been influenced by it." *Chapman*, 220 Cal. App. 4th at 229. Thus, for claims where reliance is required, if consumers offer evidence that they "would not have bought the product but for the misrepresentation," that is sufficient to establish both causation—that consumers would not have purchased the product if the misrepresentation was not made—and injury, in that the consumers parted with more money than they would otherwise have been willing to spend. *Kwikset Corp.*, 51 Cal. 4th at 330. Where the claim is based upon omission of information required to be disclosed, rather than an affirmative misrepresentation, reliance can be shown if the plaintiff proves that, "had the omitted information been disclosed[,] one would have been aware of it and behaved differently." *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1093 (1993).

Based on the evidence presented in support of and in opposition to the motion, summary judgment on standing grounds cannot be granted in favor of Great American. Disputes of fact exist on the questions of causation and injury. Goertzen proffered testimony that she would not have purchased the annuity if the surrender charges had been disclosed properly, nor would she have paid the surrender charge.

Great American objects that this testimony is a response to a leading question, inadmissible under Rule 611, subsection c, of the Federal Rules of Evidence. While it is true that the Court may only consider admissible evidence at summary judgment, it is within the Court's discretion to permit leading questions to elicit evidence. Federal Rules of Evidence § 611(c); *Esco Corp. v. United States*, 340 F.2d 1000, 1005 (9th Cir. 1965) (some leading on direct examination may proper, subject to the discretion of the trial judge). Here, the deposition testimony elicited by Goertzen's counsel is no more improper than a declaration on the same point. Certainly, a plaintiff cannot offer a sham declaration contradicting her deposition testimony simply to avoid summary judgment. *See Van Asdale v. International Game Tech.,* 577 F.3d 989, 998 (9th Cir. 2009). But a plaintiff's declaration stating the facts of her case is no more inadmissible *per se* than any party's declaration offered in its own interest. *See S.E.C. v. Phan*, 500 F.3d 895, 909 (9th

Cir. 2007) (district court erred in disregarding declarations as "uncorroborated and self-serving;" declarations are often self-serving since the party submitting it would use the declaration to support their position); *Nigro v. Sears, Roebuck and Co.*, 784 F.3d 495, 497 (9th Cir. 2015) ("the district court may not disregard a piece of evidence at the summary judgment stage solely based on its self-serving nature"). If Great American wished to cross-examine Goertzen on the question, it had the opportunity to do so during the deposition. It is not lost on the Court than Goertzen is more than 80 years old, which could have impacted her deposition testimony. Great American's objection to the leading nature of the question is overruled.[6]

Great American contends that, even if Goertzen's testimony is admitted, it is insufficient to show reliance and causation for several reasons. One, she offers no evidence that a different disclosure would have affected her decision to purchase. Two, she cannot show she was misled based on the disclosure or anything else in the policy, since she testified that she could not recall whether she read the annuity policy.[7] And three, in order to be misled in the way plaintiff contends, she would have had to read not only the jacket and cover page, but also the sections of the annuity policy concerning the surrender charges, and still not have understood that there were surrender charges.[8]

---

[6] However, Great American's objection to the declaration of her daughter, Beverly Kraus, regarding Goertzen's understanding of the policy for lack of foundation is **SUSTAINED**.

[7] The Court notes that Goertzen testified regarding the annuity policy, marked as Exhibit 17 to her deposition, as follows:
   Q: Ms. Goertzen, you have been handed a document marked Exhibit 17. Do you recognize this document?
   A: No.
   Q: Do you recall ever reading this document?
   A: No.
(Thomas Evans Decl., Exh. 1 at 33:3-8.) She was asked specifically whether she recalled reading page 3, the "Contract Specifications" page, but was not asked whether she read the policy jacket or cover page. (*Id.* at 33:9-15.)

[8] Great American contends that "the cover page disclosures [could not] realistically have caused plaintiff any confusion." (Reply at 11:21-23.) While the substance of the disclosures is not at issue in this motion, the cover page belies such a contention on its face, since it states both a 20-day *and* a 30-day cancellation period. (Thomas Evans Decl., Exh. 2.)

9

Great American's arguments overreach given the state of the record. The statute requires insurers to include a standard, highly visible disclosure on the jacket or cover page of the annuity, "based upon a public policy requiring a clear and conspicuous warning to seniors concerning surrender penalties." *Vaccarino,* 2012 WL 1247137, at *10. These disclosures serve the "remedial purpose for which the statute was adopted: to protect vulnerable seniors through mandatory language" on such policies. *Rand v. Am. Nat. Ins. Co.*, 717 F. Supp. 2d 948, 956 (N.D. Cal. 2010). The statutory protections would be rendered meaningless if a claimant could only show she was misled based on a reading of the entire policy, or evidence that some different disclosure would have sufficed.

Great American cites *Tun v. Wells Fargo Dealer Services, Inc.*, 5 Cal. App. 5th 309 (2016). In *Tun*, the plaintiff claimed an advertisement was misleading, but admitted in his testimony that he never looked at that advertisement before making a purchase decision. *Id.* at 331. Similarly, the issue in *In re iPhone* was that no plaintiff testified to having seen, read, or heard of any affirmative misrepresentations about Apple's privacy policy. *In re iPhone Application Litig.*, 6 F. Supp. 3d 1004, 1026 (N.D. Cal. 2013). Here, the claim is that the annuity policy omitted a statement required by statute to be made in a particular manner and location on the policy jacket or cover page. Regardless of whether plaintiff recalls reading her annuity policy, the claim is based upon what was missing from the policy, *i.e.*, the lack of the required warning on the jacket or cover page.[9]

Viewing the evidence in the light most favorable to the plaintiff, as the Court must on summary judgment, plaintiff's testimony is sufficient to create a triable issue. Great American is

---

[9] Great American cites *Campos v. City of Merced*, 709 F. Supp. 2d 944, 949 (E.D. Cal. 2010) for the proposition that a triable issue cannot be created by plaintiff's inability to recall events. However, under the circumstances here, a triable issue is created because required information was not disclosed and Goertzen testified that disclosure of the required information would have changed her purchasing decision.

not entitled to summary judgment on lack of UCL standing based on the current state of the record.[10]

IV. **CONCLUSION**

Based upon the foregoing, Great American's Motion for Summary Judgment for lack of standing is **DENIED.**

This terminates Docket No. 36.

**IT IS SO ORDERED.**

Dated: June 1, 2017

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

---

[10] In her opposition, Goertzen further contends that, Great American's violation of the Insurance Code's disclosure provisions meant that no surrender charges could lawfully be collected and the annuity was worth less than one free of surrender charges (Oppo. at 4:20-22; 5:4-6; 6:9-12.) These consequences do not appear to flow from the Insurance Code or any other authority. The Insurance Code provisions, though mandatory in nature, do not void the policy or the surrender provisions therein, nor is any penalty for violation specified.